## IN THE CIRCUIT COURT OF
## WOOD COUNTY, WEST VIRGINIA

**CHERYL L. CARDER,** Administratrix of
the Estates of **BEVERLY ANN TANNER,**
and **RAYMOND GLEN TANNER;** and
**RANDY TANNER,**

               Plaintiffs,

   vs.

**HOVEROUND CORPORATION,**
a foreign corporation, and **CURTISS-
WRIGHT CONTROLS INTEGRATED
SENSING, INC.,** a foreign corporation,

          Defendants.

CIVIL ACTION NO. 21-C-

INTERROGATORIES AND REQUEST
FOR PRODUCTION OF DOCUMENTS
WERE SERVED UPON DEFENDANTS
WITH THE COMPLAINT

## COMPLAINT

      Plaintiffs, Cheryl L. Carder, Administratrix of the Estate of Beverly Ann Tanner; Cheryl

L. Carder, Administratrix of the Estate of Raymond Glen Tanner; and Randy Tanner, by and

through their attorneys, **FITZSIMMONS LAW FIRM PLLC** and **LAW OFFICES OF DAVID**

**A. SIMS, PLLC,** upon information and belief, state and allege as follows for their Complaint

against Defendants Hoveround Corporation and Curtiss-Wright Controls Integrated Sensing, Inc.

(collectively hereinafter "Defendants"):

## PARTIES

      1.    Plaintiff Cheryl L. Carder is the surviving daughter of Beverly Ann Tanner and

Raymond Glen Tanner who were wrongfully killed on August 26, 2019. At the time of their death,

Beverly Ann Tanner and Raymond Glen Tanner were residents and citizens of Wood County,

West Virginia. Plaintiff Cheryl L. Carder is a resident and citizen of Wood County, West Virginia,

and was duly appointed as Administratrix of the Estates of Beverly Ann Tanner and Raymond





Glen Tanner by the County Commission of Wood County, West Virginia on September 9, 2019. A copy of the letter of administration appointing Cheryl Ann Carder as Administratrix of the Estate of Beverly Ann Tanner is attached hereto as **Exhibit A**. A copy of the letter of administration appointing Cheryl L. Carder as Administratrix of the Estate of Raymond Glen Tanner is attached hereto as **Exhibit B**.

2.      Beverly Tanner and Raymond Tanner at times herein, are collectively referred to as "Plaintiffs' Decedents."

3.      Plaintiff Randy Tanner is the son of Beverly and Raymond Tanner and is a resident and citizen of Wood County, West Virginia.

4.      Defendant Hoveround Corporation (hereinafter "Hoveround") is a Florida corporation with its principal place of business at 2151 Whitfield Industrial Way, Sarasota, Florida, 34243. Defendant Hoveround is licensed to do business in West Virginia and its registered agent for service of process is located at 5098 Washington Street W, Suite 407, Charleston, West Virginia 25313-1561. At all times material herein, Defendant Hoveround was transacting business in West Virginia and was regularly and purposefully engaged in commerce in West Virginia, including specific business activities in and/or directed to Wood County, West Virginia.

5.      Defendant Hoveround includes any and all parents, subsidiaries, affiliates, divisions, franchise, partners, joint ventures, and organizational unities of any kind, their predecessors, successors, and assigns, including, but not limited to, Hoveround Corporation, and their present officers, directors, employees, agents, representatives, and any other person acting on their behalf.

6.      Upon information and belief, in committing the acts alleged herein, each and every managing agent, agent, representative, and/or employee of Defendant Hoveround was working

2

within the course and scope of said agency, representation and/or employment, and said acts were authorized, ordered, condoned, done and/or ratified by Defendant Hoveround's directors, officers, agents, employees, or representatives while engaged in the management, direction, control or transaction of Defendant Hoveround's business affairs.

7.      At all times material herein, Defendant Hoveround was engaged in the business of manufacturing, designing, fabricating, formulating, producing, creating, making, constructing, assembling, remanufacturing, rebuilding, modifying, altering, packaging, shipping, selling, servicing and/or distributing power wheelchairs, mobility scooters, travel mobility devices, accessories, wheelchair ramps, stair lifts, and other devices used to support persons with limited mobility, including the product known as the MPV5 power wheelchair.

8.      Defendant Curtiss-Wright Controls Integrated Sensing, Inc. (hereinafter "Curtiss-Wright") is a Delaware corporation with its principal place of business at 15801 Brixham Hill Avenue, Suite 200, Charlotte, NC 28277. At all times material herein, Defendant Curtiss-Wright was transacting business in the State of West Virginia and was regularly and purposefully engaged in commerce in West Virginia, including specific business activities in and/or directed to Wood County, West Virginia.

9.      Defendant Curtiss-Wright includes any and all parents, subsidiaries, affiliates, divisions, franchise, partners, joint ventures, and organizational unities of any kind, their predecessors, successors, and assigns, including, but not limited to, Curtiss-Wright Controls Integrated Sensing, Inc., and their present officers, directors, employees, agents, representatives, and any other person acting on their behalf.

10.     Upon information and belief, in committing the acts alleged herein, each and every managing agent, agent, representative, and/or employee of Defendant Curtiss-Wright was working

3

within the course and scope of said agency, representation and/or employment, and said acts were authorized, ordered, condoned, done and/or ratified by Defendant Curtiss-Wright's directors, officers, agents, employees, or representatives while engaged in the management, direction, control or transaction of Defendant Curtis-Wright's business affairs.

11.    At all times material herein, Defendant Curtiss-Wright was engaged in the business of manufacturing, designing, fabricating, formulating, producing, creating, making, constructing, assembling, remanufacturing, rebuilding, modifying, altering, packaging, shipping, selling, servicing and/or distributing component parts that are used in mobility devices serving medical markets, which includes electronic controllers (including the joystick hand control and associated wire harness assembly) for the Hoveround MPV5 power wheelchair purchased by Beverly Tanner from Defendant Hoveround.

## JURISDICTION AND VENUE

12.    The Court has subject matter jurisdiction over the claims made by Plaintiffs herein pursuant to Article VIII, Section 6 of the West Virginia Constitution and W.Va. Code § 51-2-2.

13.    This Court has personal jurisdiction over the Defendants in that they conducted business in West Virginia at all times material herein and committed acts and/or omissions in or outside West Virginia which caused tortious injury to Plaintiffs.

14.    Venue is proper in this Court pursuant to W.Va. Code §56-1-1 in that all material acts described herein occurred in Wood County, West Virginia and Plaintiffs' causes of action arose in Wood County, West Virginia.

## FACTUAL ALLEGATIONS

15.    Defendant Hoveround represents on its website: "After 25 years, Hoveround Corporation has become the largest direct-to-consumer manufacturer of the most maneuverable,

4

reliable, and compact power chairs available in the United States. The company's mission — to improve the quality of life for people with restricted mobility — continues unchanged to this day."

16.     Defendant Hoveround's representations regarding its power wheelchairs are directed to the elderly and the infirmed, so that people like Plaintiffs' Decedents will purchase their products.

17.     The representations by Hoveround further state that Hoveround's continued success stems from their "Model of Total Responsibility" which is identified as follows:

a) We are 100% accountable for the quality and reliability of our products.

b) We control the manufacture, design, delivery, and service of all Hoveround power chairs.

c) We focus our complete attention on serving the mobility needs of our clients.

d) We are committed to providing state-of-the-art innovations and best-in-class service.

e) We are never satisfied and continually research new and better ways to enhance the quality of life of our clients so that they may have the means to fuller, richer experiences through improved mobility.

18.     One of the mobility devices manufactured, designed, assembled, sold, and/or distributed by Defendant Hoveround is a power wheelchair Model MPV5.

19.     According to Defendant Hoveround's website, the Model MPV5 is comprised of the following components: an electronic controller, an electric motor or motors, motorized drive configuration, batteries, tires, and wheels.

20.     At some time prior to August 26, 2019, Beverly Tanner purchased a Hoveround MPV5 power wheelchair, Serial Number 5824129 (hereinafter the "Hoveround MPV5") from Defendant Hoveround to assist with her and her husband's difficulties ambulating during their elderly years. In addition, after the purchase of the Hoveround MPV5, Beverly Tanner underwent a above the knee amputations to both her right and left legs.

21.    At all times material herein, included as a component part of the Hoveround MPV5 power wheelchair was an electronic controller Model Number D51333.06, which consisted of a joystick hand control and wire harness assembly (hereafter at times referred to as the "electronic controller"). The electronic controller was manufactured, designed, fabricated, formulated, produced, created, made, constructed, assembled, packaged, shipped, sold and/or distributed by Defendant Curtiss-Wright.

22.    Beginning in or about November of 2018, Beverly Tanner began experiencing problems with the Hoveround MPV5 and Beverly Tanner and/or her husband, Raymond Tanner, contacted Defendant Hoveround, who sent one of its employees and/or agents and/or apparent agents to inspect and service the Hoveround MPV5.

23.    Defendant Hoveround's employee(s) and/or agent(s) arrived at Plaintiffs' Decedents' home in or about late December 2018, to inspect the Hoveround MPV5. Defendant Hoveround's employee and/or agent advised Plaintiffs' Decedents that the motors and the batteries needed replaced. Upon replacing the motors and the batteries, Defendant Hoveround's employee and/or agent advised Plaintiff's decedents that the motors were not the problem, as the Hoveround MPV5 still did not function properly, and that he would need to replace the electronic controller.

24.    The electronic controller for the Hoveround MPV5 was replaced in or about January of 2019, by Defendant Hoveround's service technician, who was at all times material herein an employee and/or agent and/or apparent agent of Defendant Hoveround.

25.    On or about August 25, 2019, the Hoveround MPV5 was not functioning properly in that it was lurching and lunging and not moving as it should when being operated by the joystick controller.

26.     In the evening of August 25, 2019, the Hoveround MPV5 was being stored for the night on the rear covered porch of Plaintiffs' Decedents' home, and at this time, the Hoveround MPV5 was not plugged into an electrical receptacle to recharge the mobility device. However, because there is no master cut-off switch, portions of the Hoveround MPV5 remain energized at all times, including the wiring harness associated with the electronic controller.

27.     On August 26, 2019, a fire started at Beverly and Raymond Tanner's home located at 4109 8th Avenue, Parkersburg, WV 26101.

28.     After the fire started, Plaintiff Randy Tanner, who was staying at his parents' home, awoke to a beeping sound coming from an alarm. After awakening, Plaintiff Randy Tanner got out of bed and went to the door of his bedroom and when he opened the door, Randy Tanner encountered extreme heat and smoke from a fire.

29.     Plaintiff Randy Tanner, aware that his mother, a double amputee, was in the bedroom down the hall, immediately ran to the room where his parents were sleeping. Upon reaching his mother, Plaintiff Randy Tanner tried to pick up Beverly Tanner to remove her from the burning house, but he blacked out due to smoke inhalation from the fire.

30.     After some period-of-time elapsed, Plaintiff Randy Tanner regained consciousness and crawled to the front door, unlocked the door and escaped from the burning house.

31.     Once outside the home, Plaintiff Randy Tanner tried to get help for his elderly parents, and at one point, he attempted to re-enter the burning home to save his elderly parents, but the heat and smoke were so intense that he could not safely enter the home. While outside the home, Plaintiff Randy Tanner could hear his parents yelling and screaming in pain and fear.

32.     Beverly Tanner and Raymond Tanner never made it out of the home and they both died in the fire on August 26, 2019.

7

33.     Following the fire, the bodies of Beverly Tanner and Raymond Tanner were sent to the Office of the Chief Medical Examiner for the State of West Virginia for autopsy, which further confirmed their deaths were caused by the subject fire at their home. Beverly Tanner's body was so badly burned in the fire that DNA testing was utilized to confirm her identity.

34.     Following the fire, an investigation was conducted which determined that the Hoveround MPV5 was the origin of the fire, specifically the wiring harness associated with the electronic controller.

35.     The fatal fire and resulting injuries, damages, and wrongful death of Beverly and Raymond Tanner, together with the injuries and damages sustained by Randy Tanner, were directly and proximately caused by the defective design and manufacture of the Hoveround MPV5 and its component electronic controller.

36.     At all times material herein, the Hoveround MPV5 and its component electronic controller were defective in that they were unreasonably dangerous and presented an increased risk of serious injury and/or death when used for its intended purpose and were further defective in design and manufacture in that the Hoveround MPV5 and its component electronic controller, *inter alia*: (a) were not designed and equipped with properly sized conductors in the wire harness assembly located between the power supply (batteries) and the electronic controller; (b) were not designed and equipped with proper coordination of the fuse size and conductor size for the expected electrical loading of the Hoveround MPV5; and (c) failed to contain a properly located master cut-off switch at the power supply (batteries).

37.     Additionally, at all times material herein, the Hoveround MPV5 and its component electronic controller was not fit for the ordinary purposes for which such goods are used.

38.     As the manufacturers, designers, fabricators, formulators, producers, creators, makers, constructers, assemblers, packagers, shippers, sellers and/or distributors of the Hoveround MPV5 and/or its component electronic controller, Defendants had a duty to provide equipment free of defects including, but not limited to: (a) equipment with properly sized conductors in a wire harness assembly located between the power supply (batteries) and the electronic controller; (b) equipment with proper coordination of the fuse size and conductor size for the expected electrical loading of the Hoveround MPV5; and (c) equipment with a properly located master cut-off switch at the power supply (batteries).

39.     At all times material herein, Defendants knew or should have known that the Hoveround MPV5 and/or its component electronic controller were defective and their foreseeable risks exceeded the benefits associated with their design or formulation. Nonetheless, Defendants placed the subject Hoveround MPV5 and its component electronic controller in the stream of commerce with knowledge that they would be used by consumers such as Beverly Tanner and Raymond Tanner.

40.     Despite knowledge that the subject Hoveround MPV5 and/or its component electronic controller were defective and not fit for its ordinary purpose, Defendants failed to provide adequate warnings concerning the defective nature and condition of the Hoveround MPV5 and its component electronic controller prior to August 26, 2019.

41.     At all times material herein, neither Plaintiffs' Decedents nor Plaintiff Randy Tanner knew or should have known of the defective condition and nature of the Hoveround MPV5 and/or its component electronic controller.

9

42.     At all times material herein, the subject Hoveround MPV5 and its component electronic controller were in substantially the same defective condition when they left control of the Defendants.

43.     At all times material herein and specifically on August 26, 2019, the Hoveround MPV5 and/or its component electronic controller malfunctioned causing it to catch fire, and said malfunction would not ordinarily happen in the absence of a product defect.

44.     At all times material herein, there was no abnormal use of the Hoveround MPV5 or the electronic controller.

45.     At all times material herein, there is no reasonable secondary cause for the malfunction of the Hoveround MPV5 besides the product defect(s) identified herein.

46.     As a direct and proximate result of the defective condition of the subject Hoveround MPV5 and/or its component electronic controller, the Hoveround MPV5 caught fire while it was not in use and Beverly Tanner and Raymond Tanner suffered severe and extreme burn injuries and asphyxiation resulting in their deaths.

47.     As a direct and proximate result of the actions, omissions, and conduct of the Defendants as described herein, Beverly Tanner suffered severe and extreme personal and emotional injuries during her lifetime when the Hoveround MPV5 caught fire and engulfed the Tanner's residence in flames and smoke, including without limitation:

      a)   Extreme pain and suffering;

      b)   Permanent scarring and disfigurement;

      c)   Extreme mental anguish;

      d)   Emotional distress;

      e)   Annoyance, aggravation, and inconvenience;

      f)   Loss of the enjoyment of life;

10

g) Medical expenses;

h) Lost wages;

i) Loss of future wages, earning capacity, and benefits;

j) Loss of the ability to perform household services;

k) Funeral, burial, and memorial expenses;

l) Property damage; and

m) All other damages permitted by applicable law.

48.    As a further direct and proximate result of the actions, omissions, and conduct of the Defendants as described herein, Raymond Tanner suffered severe and extreme personal and emotional injuries during his lifetime when the Hoveround MPV5 caught fire and engulfed the Tanner's residence in flames and smoke, including without limitation:

a) Extreme pain and suffering;

b) Permanent scarring and disfigurement;

c) Extreme mental anguish;

d) Emotional distress;

e) Annoyance, aggravation, and inconvenience;

f) Loss of the enjoyment of life;

g) Medical expenses;

h) Lost wages;

i) Loss of future wages, earning capacity, and benefits;

j) Loss of the ability to perform household services;

k) Funeral, burial, and memorial expenses;

l) Property damage; and

m) All other damages permitted by applicable law.

11

49.     As a further direct and proximate result of the actions, omissions, and conduct of the Defendants as described herein, Plaintiff Cheryl L. Carder, Administratrix of the Estates of Beverly Tanner and Raymond Tanner, and the statutory beneficiaries of Beverly and Raymond Tanner have been damaged and sustained the following damages, injuries, and losses:

      a) The wrongful death of Beverly Tanner and Raymond Tanner;

      b) Medical bills;

      c) Funeral, burial, and memorial expenses;

      d) Lost wages;

      e) Lost future earnings, wages, capacity and benefits;

      f) Lost household services;

      g) Loss of Beverly Tanner's and Raymond Tanner's society, companionship, comfort, guidance, kindly offices, advice, services, protection, care and assistance;

      h) Severe and extreme mental anguish and solace, past and future;

      i) Property damage; and

      j) All other damages permitted by applicable law.

50.     As a resident of the household and a potential victim of the fire, Plaintiff Randy Tanner suffered personal injuries and damages, including damages from smoke inhalation and other physical, emotional and psychological injuries from having to flee for his life from the blazing home and sensorily observing his parents' death, and said injuries and damages are permanent and lasting in nature.

51.     As the son of Beverly and Raymond Tanner who was physically present in the home and escaped the fire, Plaintiff Randy Tanner sensorily observed and witnessed his parents die in the fire despite his attempts to rescue them, and as a result, Plaintiff Randy Tanner suffered severe emotional distress and said severe emotional distress is permanent and lasting in nature.

52.    As a direct and proximate result of each wrongful and tortious act of Defendants as described herein, Plaintiff Randy Tanner has sustained the following damages, injuries, and losses:

    a)  Severe and permanently disabling personal injuries as well as psychological injuries;

    b)  Severe emotional distress, past and future;

    c)  Medical bills, past and future;

    d)  Lost wages and benefits;

    e)  Lost future earnings, wages, capacity and benefits;

    f)  Lost household services and future lost household services;

    g)  Extreme physical pain and suffering, past and future;

    h)  Extreme mental anguish and suffering, past and future;

    i)  Permanent physical impairment;

    j)  Loss of capacity to enjoy life and engage in normal activities, past and future;

    k)  Annoyance and inconvenience, humiliation, embarrassment, and aggravation, past and future;

    l)  Damages for his own personal property losses destroyed in the fire, in an amount to be determined; and

    m)  All damages permitted by applicable law.

53.    The acts, omissions, and/or conduct of Defendants, as described herein, were further carried out with actual malice towards Plaintiffs and Plaintiffs' Decedents and/or were done with a conscious, reckless, and outrageous indifference to the health, safety, and welfare of Plaintiffs and Plaintiffs' Decedents and others.

54.    Plaintiffs incorporate by reference each of the averments set forth in the preceding Paragraphs in each Count of this Complaint.

## COUNT ONE - NEGLIGENCE
### *By Plaintiffs v. Hoveround*

55.     At all times material herein, Defendant Hoveround owed a duty to Plaintiffs and

Plaintiffs' Decedents to use care for their safety, which they negligently and/or recklessly breached

by, but not limited to:

    a) Failing to provide a power wheelchair and its component parts and, in
particular, the Hoveround MPV5, of a reasonable and prudent design and
function;

    b) Failing to provide a Hoveround MPV5 with proper safety controls including,
but not limited to, a properly functioning electronic controller and associated
wiring harness;

    c) Failing to design the Hoveround MPV5 in a manner in which it would be
reasonably safe so that when used as intended it would not cause injury;

    d) Failing to manufacture the Hoveround MPV5 free of defects or dangerous
propensities;

    e) Failing to inspect the Hoveround MPV5 to ensure it was reasonably safe and
free from defects;

    f) Failing to adequately test the Hoveround MPV5;

    g) Failing to adequately warn about dangers which were reasonably foreseeable
and scientifically discoverable regarding the use of the Hoveround MPV5;

    h) Failing to convey to exposed consumers including Beverly Tanner and
Raymond Tanner a fair indication of the nature and extent of danger inherent
with the use of the Hoveround MPV5 and its electronic controller and
associated wiring harness;

    i) Failing to provide appropriate warnings and instruction to prevent or limit
Beverly Tanner and Raymond Tanner's exposure from the sale of unreasonably
dangerous products;

    j) Failing to convey how to avoid dangers associated with the use of the
Hoveround MPV5;

    k) Failing to use reasonable care in designing, manufacturing, testing, monitoring,
altering, selling, and/or distributing the Hoveround MPV5;

l)  Failing to use reasonable care in the repairs of the Hoveround MPV5 and/or in the replacement and/or installment of component parts for the Hoveround MPV5;

m)  Failing to use due care; and

n)  Other acts and omissions both known and unknown to Plaintiffs.

56.    As a direct and proximate result of the actions, omissions, and/or conduct of Defendant Hoveround, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

57.    As a direct and proximate result of the actions, omissions, and/or conduct of Defendant Hoveround, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

58.    As a direct and proximate of the actions, omissions, and/or conduct of Defendant Hoveround, Plaintiff Randy Tanner has been damaged and injured as is set forth herein.

## COUNT TWO: STRICT LIABILITY – DEFECTIVE DESIGN
### *By Plaintiffs vs. Hoveround*

59.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

60.    At all times material herein, the Hoveround MPV5 was defective in design in that, at the time it left control of Defendant Hoveround, the foreseeable risks associated with its design or formulation exceeded the benefits with its design.

61.     As all times material herein, the Hoveround MPV5 was defective in design in that the Hoveround MPV5, *inter alia*: (a) was designed with improperly sized conductors in the wire harness assembly located between the power supply (batteries) and the electronic controller; (b) was designed with improper coordination of the fuse size and conductor size for the expected electrical loading of the Hoveround MPV5; and (c) was not designed with a properly located master cut-off switch at the power supply (batteries).

62.     At all times material herein, the Defendant Hoveround knew or reasonably should have known and/or recognized that the Hoveround MPV5 was defective and unreasonably dangerous in that the foreseeable risks associated with its design or formulation exceeded the benefits associated with its design or formulation.

63.     The Hoveround MPV5 reached the users thereof, including Beverly Tanner and Raymond Tanner, in substantially the same condition as when it was originally manufactured, distributed, and/or sold by the Defendant Hoveround.

64.     As a direct and proximate result of the defective design of the Hoveround MPV5, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

65.     As a direct and proximate result of the defective design of the Hoveround MPV5, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

16

66.     As a direct and proximate result of the defective design of the Hoveround MPV5, Plaintiff Randy Tanner has been damaged and injured as is set forth herein.

## COUNT THREE: STRICT LIABILITY – DEFECTIVE MANUFACTURE
### By Plaintiffs vs. Hoveround

67.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

69.     At all times material herein, the Hoveround MPV5 and, in particular, the electronic controller and wiring within the associated wiring harness, was defective in manufacture or construction in that, when it left the control of the Defendants, it deviated in a material way from the design specification, formula or performance standards of Defendant Hoveround, and/or from otherwise identical units manufactured to the same design specifications, formula or performance standards.

70.     At all times material herein, the Hoveround MPV5 and, in particular, the electronic controller and wiring within the associated wiring harness, was further defective in manufacture or construction in that it was incapable of performing its intended function under normal operating conditions without allowing an electrical failure and/or resulting fire.

71.     As a result of this defect, the Hoveround MPV5 was unreasonably dangerous and presented a high degree or risk.

72.     The Hoveround MPV5 reached the users thereof, including Beverly Tanner and Raymond Tanner, in substantially the same condition as when it was originally manufactured, distributed, and/or sold by Defendant Hoveround.

73.     At all times material herein and specifically on August 26, 2019, the Hoveround MPV5 malfunctioned causing it to catch fire, and said malfunction would not ordinarily happen in the absence of a product defect.

74.    At all times material herein, there was no abnormal use of the Hoveround MPV5.

75.    At all times material herein, there is no reasonable secondary cause for the malfunction of the Hoveround MPV5 besides the product defect(s) identified herein.

76.    As a direct and proximate result of the defective manufacture of the Hoveround MPV5, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

77.    As a direct and proximate result of the defective manufacture of the Hoveround MPV5, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

78.    As a direct and proximate result of the defective manufacture of the Hoveround MPV5, Plaintiff Randy Tanner has been damaged and injured as is set forth herein.

## COUNT FOUR: STRICT LIABILITY – FAILURE TO WARN
### *By Plaintiffs vs. Hoveround*

79.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

80.    At all times material herein, the subject Hoveround MPV5 was defective and unreasonably dangerous in that it presented an increased risk of serious injury and/or death when used for its intended purpose.

81.    At all times material herein, Defendant Hoveround knew, or in the exercise of reasonable care, should have known about the risks associated with the Hoveround MPV5.

18

82.     At all times material herein, Defendant Hoveround failed to provide the warning and/or instruction that a manufacturer exercising reasonable care would have provided concerning the risks associated with the Hoveround MPV5, in light of the likelihood that the Hoveround MPV5 would cause the type of harm suffered by Plaintiffs on August 26, 2019.

83.     As a direct and proximate result of Defendant's failure to warn about the dangers and risks relating to the use of the Hoveround MPV5, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

84.     As a direct and proximate result of Defendant's failure to warn about the dangers and risks relating to the use of the Hoveround MPV5, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

85.     As a direct and proximate result of Defendant's failure to warn about the dangers and risks relating to the use of the Hoveround MPV5, Plaintiff Randy Tanner has been damaged and injured as is set forth herein.

## COUNT FIVE: BREACH OF WARRANTY
### By Plaintiffs vs. Hoveround

86.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

87.     Defendant Hoveround sold, distributed, and/or supplied the Hoveround MPV5 and was a merchant with respect to goods of that kind. As such, a warranty that the subject Hoveround MPV5 was merchantable was implied in the contract for its sale.

19

88. At all times material herein, Defendant Hoveround breached this warranty in that the Hoveround MPV5 was not fit for the ordinary purposes for which such goods are sold.

89. At all times material herein, the subject Hoveround MPV5 was defective and dangerous in that the foreseeable risks associated with its design exceeded the benefits associated with its design or formulation.

90. At all times material herein, Defendant Hoveround knew, or reasonably should have known, that the Hoveround MPV5 was defective and unreasonably dangerous in that the foreseeable risks associated with its design or formulation exceeded the benefits with its design.

91. At all times material herein, the manner in which the Hoveround MPV5 was being used on August 26, 2019, was foreseeable to Defendant Hoveround and, therefore, Defendant Hoveround had a duty to warn and/or instruct about the risks and hazards associated with the use of the Hoveround MPV5.

92. At all times material herein, Defendant Hoveround further breached its implied warranty of merchantability by failing to adequately warn and/or instruct about the dangerous characteristics or propensities of the Hoveround MPV5.

93. As a direct and proximate result of Defendant Hoveround's breach of its implied warranty of merchantability, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is hereinafter set forth.

94. As a direct and proximate result of Defendant Hoveround's breach of its implied warranty of merchantability, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder,

Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is hereinafter set forth.

95.    As a direct and proximate result of Defendant Hoveround's breach of its implied warranty of merchantability, Plaintiff Randy Tanner has been damaged and injured as is hereinafter set forth.

**COUNT SIX: NEGLIGENCE**
*By Plaintiffs vs. Curtiss-Wright*

96.    At all times material herein, Defendant Curtiss-Wright owed a duty to Plaintiffs and Plaintiffs' Decedents to use care for their safety, which it negligently and/or recklessly breached by, but not limited to:

a) Failing to provide an electronic controller and associated wire harness of a reasonable and prudent design and function;

b) Failing to provide an electronic controller and associated wire harness with proper safety controls including, but not limited to, a properly functioning shut off switch;

c) Failing to design the subject electronic controller and associated wire harness for the Hoveround MPV5 in a manner in which it would be reasonably safe so that when used as intended it would not cause injury;

d) Failing to manufacture the subject electronic controller and associated wire harness for the Hoveround MPV5 free of defects or dangerous propensities;

e) Failing to inspect the subject electronic controller and associated wire harness for the Hoveround MPV5 to ensure it was reasonably safe and free from defects;

f) Failing to adequately test the electronic controller and associated wire harness for the Hoveround MPV5;

g) Failing to adequately warn about dangers which were reasonably foreseeable and scientifically discoverable regarding the use of the electronic controller and associated wire harness for the Hoveround MPV5;

h) Failing to convey to exposed consumers including Beverly Tanner and Raymond Tanner a fair indication of the nature and extent of danger inherent with the use of the Hoveround MPV5 and its electronic controller and associated wiring harness;

21

i) Failing to provide appropriate warnings and instruction to prevent or limit Beverly Tanner and Raymond Tanner's exposure from the sale of unreasonably dangerous products;

j) Failing to convey how to avoid dangers associated with the use of the electronic controller and associated wire harness;

k) Failing to use reasonable care in designing, manufacturing, testing, monitoring, altering, selling, and/or distributing the electronic controller for the Hoveround MPV5;

l) Failing to use due care; and

m) Other acts and omissions both known and unknown to Plaintiffs.

97.     As a direct and proximate result of the actions, omissions, and/or conduct of Defendant Curtiss-Wright, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

98.     As a direct and proximate result of the actions, omissions, and/or conduct of Defendant Curtiss-Wright, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

99.     As a direct and proximate of the actions, omissions, and/or conduct of Defendant Curtiss-Wright, Plaintiff Randy Tanner has been damaged and injured as is set forth herein.

## COUNT SEVEN: STRICT LIABILITY – DESIGN DEFECT
*By Plaintiffs vs. Curtiss-Wright*

100.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

101.    At all times material herein, the electronic controller and associated wire harness on the Hoveround MPV5 was defective in design in that, at the time it left control of Defendant Curtiss-Wright, the foreseeable risks associated with its design or formulation exceeded the benefits with its design.

102.    As all times material herein, the electronic controller and associated wire harness on the Hoveround MPV5 was defective in design in that they, *inter alia*: (a) were designed with improperly sized conductors in the wire harness assembly located between the power supply (batteries) and the electronic controller; (b) were designed with improper coordination of the fuse size and conductor size for the expected electrical loading of the electronic controller for the Hoveround MPV5; and (c) were not designed with a properly located master cut-off switch at the power supply (batteries).

103.    At all times material herein, Defendant Curtiss-Wright knew or reasonably should have known and/or recognized that the electronic controller and associated wire harness on the Hoveround MPV5 were defective and unreasonably dangerous in that the foreseeable risks associated with its design or formulation exceeded the benefits associated with its design or formulation.

104.    The electronic controller and associated wire harness on the Hoveround MPV5 reached the users thereof, including Beverly Tanner and Raymond Tanner, in substantially the same condition as when it was originally manufactured, distributed, and/or sold by Defendant Curtiss-Wright.

23

105.    As a direct and proximate result of the defective design of the electronic controller and associated wire harness on the Hoveround MPV5, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

106.    As a direct and proximate result of the defective design of the electronic controller and associated wire harness on the Hoveround MPV5, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

107.    As a direct and proximate result of the defective design of the electronic controller and associated wire harness on the Hoveround MPV5, Plaintiff Randy Tanner has been damaged and injured as is set forth herein.

## COUNT EIGHT: STRICT LIABILITY – DEFECTIVE MANUFACTURE
### *By Plaintiffs vs. Curtiss-Wright*

108.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

109.    At all times material herein, the electronic controller and wiring within the associated wiring harness, was defective in manufacture or construction in that, when it left the control of Defendant Curtiss-Wright, they deviated in a material way from the design specification, formula, or performance standards of Defendant Curtiss-Wright, and/or from otherwise identical units manufactured to the same design specifications, formula, or performance standards.

110.    At all times material herein, the electronic controller and wiring within the associated wiring harness, was further defective in manufacture or construction in that it was

24

incapable of performing its intended function under normal operating conditions without allowing an electrical failure and/or resulting fire.

111.    As a result of this defect, the electronic controller and associated wire harness on the Hoveround MPV5 was unreasonably dangerous and presented a high degree or risk.

112.    The electronic controller and associated wire harness on the Hoveround MPV5 reached the users thereof, including Beverly Tanner and Raymond Tanner, in substantially the same condition as when they were originally manufactured, distributed, and/or sold by Defendant Curtiss-Wright.

113.    At all times material herein and specifically on August 26, 2019, the electronic controller and associated wire harness on the Hoveround MPV5 malfunctioned causing it to catch fire, and said malfunction would not ordinarily happen in the absence of a product defect.

114.    At all times material herein, there was no abnormal use of the electronic controller and associated wire harness on the Hoveround MPV5.

115.    At all times material herein, there is no reasonable secondary cause for the malfunction of the electronic controller and associated wire harness on the Hoveround MPV5 besides the product defect(s) identified herein.

116.    As a direct and proximate result of the defective manufacture of the electronic controller and associated wire harness on the Hoveround MPV5, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

117.    As a direct and proximate result of the defective manufacture of the electronic controller and associated wire harness on the Hoveround MPV5, Raymond Tanner suffered

25

extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

118.    As a direct and proximate result of the defective manufacture of the electronic controller and associated wire harness on the Hoveround MPV5, Plaintiff Randy Tanner has been damaged and injured as set forth herein.

### COUNT NINE: STRICT LIABILITY – FAILURE TO WARN
*By Plaintiffs vs. Curtiss-Wright*

119.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

120.    At all times material herein, the electronic controller and associated wire harness on the Hoveround MPV5 was defective and unreasonably dangerous in that it presented an increased risk of serious injury and/or death when used for its intended purpose.

121.    At all times material herein, Defendant Curtiss-Wright knew, or in the exercise of reasonable care, should have known about the risks associated with the electronic controller and associated wire harness on the Hoveround MPV5.

122.    At all times material herein, Defendant Curtiss-Wright failed to provide the warning and/or instruction that a manufacturer exercising reasonable care would have provided concerning the risks associated with the electronic controller and associated wire harness on the Hoveround MPV5, in light of the likelihood that these products would cause the type of harm suffered by Plaintiffs on August 26, 2019.

123.    As a direct and proximate result of Defendant's failure to warn about the dangers and risks relating to the use of the electronic controller and associated wire harness on the Hoveround MPV5, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and

26

anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

124.    As a direct and proximate result of Defendant's failure to warn about the dangers and risks relating to the use of the electronic controller and associated wire harness on the Hoveround MPV5, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

125.    As a direct and proximate result of Defendant's failure to warn about the dangers and risks relating to the use of the electronic controller and associated wire harness on the Hoveround MPV5, Plaintiff Randy Tanner has been damaged and injured as is set forth herein.

## COUNT TEN: BREACH OF WARRANTY

### *By Plaintiffs vs. Curtiss-Wright*

126.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

127.    Defendant Curtiss-Wright sold, distributed, and/or supplied the electronic controller and associated wire harness on the Hoveround MPV5 and was a merchant with respect to goods of that kind. As such, a warranty that the electronic controller and associated wire harness on the Hoveround MPV5 was merchantable was implied in the contract for its sale.

128.    At all times material herein, Defendant Curtiss-Wright breached this warranty in that the electronic controller and associated wire harness on the Hoveround MPV5 was not fit for the ordinary purposes for which such goods are sold.

27

129.    At all times material herein, the electronic controller and associated wire harness on the Hoveround MPV5 was defective and dangerous in that the foreseeable risks associated with their design exceeded the benefits associated with their design or formulation.

130.    At all times material herein, Defendant Curtiss-Wright knew, or reasonably should have known, that the electronic controller and associated wire harness on the Hoveround MPV5 was defective and unreasonably dangerous in that the foreseeable risks associated with their design or formulation exceeded the benefits with their design.

131.    At all times material herein, the manner in which the electronic controller and associated wire harness on the Hoveround MPV5 were being used on August 26, 2019, was foreseeable to Defendant Curtiss-Wright and, therefore, Defendant Curtiss-Wright had a duty to warn and/or instruct about the risks and hazards associated with the use of the electronic controller and associated wire harness on the Hoveround MPV5.

132.    At all times material herein, Defendant Curtiss-Wright further breached its implied warranty of merchantability by failing to adequately warn and/or instruct about the dangerous characteristics or propensities of the electronic controller and associated wire harness on the Hoveround MPV5.

133.    As a direct and proximate result of Defendant's breach of its implied warranty of merchantability, Beverly Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Beverly Tanner, and the statutory beneficiaries of Beverly Tanner have been damaged and injured as is set forth herein.

134.    As a direct and proximate result of Defendant's breach of its implied warranty of merchantability, Raymond Tanner suffered extreme pre-death pain, suffering, anguish, and anxiety

and was wrongfully killed on August 26, 2019, and Plaintiff Cheryl Carder, Administratrix of the Estate of Raymond Tanner, and the statutory beneficiaries of Raymond Tanner have been damaged and injured as is set forth herein.

135. As a direct and proximate result of Defendant's breach of its implied warranty of merchantability, Plaintiff Randy Tanner has been damaged and injured as is set forth herein.

## COUNT ELEVEN: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *By Plaintiff Randy Tanner vs. All Defendants*

136. On or before August 26, 2019, Defendants acted negligently and recklessly, as aforesaid, and as a direct and proximate result thereof a fire occurred at Plaintiff Randy Tanner's parents' home. Plaintiff Randy Tanner's parents were trapped inside their home where they eventually burned to death.

137. Plaintiff Randy Tanner was inside his parents' home when the fire occurred and witnesses and/or sensorially observed his parents being critically injured and burned to death.

138. As a direct and proximate result of witnessing and/or sensorially observing his parents' death, Plaintiff Randy Tanner has sustained and suffered severe and serious emotional distress.

139. Plaintiff Randy Tanner's serious emotional distress was reasonably foreseeable as he is the son of Beverly and Raymond Tanner; he was present in the home when the fire started and in the zone of danger; he attempted to rescue his parents, but had to escape the burning house to save his own life; he was aware his parents remained in the burning home, helpless to escape; and he heard his parents yell in fear for their lives and he witnessed them die in the fire.

## PRAYER

**Wherefore**, Plaintiffs, Cheryl L. Carder, Administratrix of the Estates of Beverly Ann Tanner and Raymond Glen Tanner, and Randy Tanner, demand judgment against Defendants, jointly and severally, for:

    a) An amount of compensatory damages determined by a judge or jury according to the laws of the State of West Virginia;

    b) An amount of punitive damages determined by a judge or jury according to the laws of the State of West Virginia;

    c) Pre-judgment and post-judgment interest as provided under the law;

    d) Costs and attorney fees expended in the prosecution of this matter, if permitted; and

    e) Any and all further relief as a court and/or jury deem just and proper.

The minimum jurisdictional amount established for filing this action is satisfied.

## PLAINTIFFS DEMAND A TRIAL BY JURY.

Respectfully Submitted,

**CHERYL L. CARDER,** Administratrix of the Estates of **BEVERLY ANN TANNER** and **RAYMOND GLEN TANNER,** and **RANDY TANNER,** *Plaintiffs*

By:

Robert P. Fitzsimmons (WV Bar # 1212)
Brent E. Wear (WV Bar # 9754)
Clayton J. Fitzsimmons (WV Bar #10823)
Mark A. Colantonio (WV Bar # 4328)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, West Virginia 26003
Telephone: (304) 277-1700
Fax:  (304) 277-1705
Email: bob@fitzsimmonsfirm.com
Email: brent@fitzsimmonsfirm.com

30

and
David A. Sims (WV Bar # 5196)
LAW OFFICES OF DAVID A. SIMS, PLLC
P.O. Box 5349
Vienna, West Virginia 26105
304-428-5291
304-328-5293 (Fax)
David.sims@mywvlawyer.com

*Counsel for Plaintiffs*

31